UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOGWATCH, INC. )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>PET PERIMETERS, INC. F/K/A )<br>DOGWATCH OF HAMPTON ROADS INC. A )<br>VIRGINIA CORPORATION, AND WILLIAM )<br>GRAY )<br>)<br>    Defendant. )<br>) | Civil Action No. 05-10877-DPW |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE/MOTION FOR TRANSFER TO EASTERN DISTRICT OF VIRGINIA**

Defendants Pet Perimeters, Inc. f/k/a DogWatch of Hampton Roads, Inc. ("Pet Perimeters") and William Gray ("Gray") (collectively "defendants") submit this memorandum of law in support of their motion to dismiss for improper venue/transfer to the Eastern District of Virginia.

**Allegations of Complaint**

Plaintiff DogWatch, Inc. ("plaintiff"), a manufacturer and seller of electronic animal restraint systems, has sued defendants for alleged infringement of plaintiff's registered trademark "DogWatch." The alleged infringement followed defendants' termination in July, 2004 of the dealer agreement under which Pet Perimeters was an authorized local dealer of plaintiff's trademarked products in the Virginia Beach/Hampton Roads region of Virginia. Plaintiff is a Massachusetts corporation with a principal place of business in Natick, Massachusetts, while Pet Perimeters is a Virginia corporation with a principal place of business in Virginia Beach,

Virginia and Gray is Pet Perimeters' President and a resident of Virginia Beach [Complaint, ¶¶ 5-7]. The Complaint alleges that plaintiff has been in the business of marketing and selling electronic animal restraint systems; that these products have been promoted widely by plaintiff; that they are sold under the "arbitrary and distinctive name 'DogWatch'", which is used by plaintiff to identify the source of the products and which is the subject of a 1993 federal registration [*Id*., ¶¶ 12-14]. The Complaint alleges that plaintiff's products are marketed through a network of authorized local dealers who enter into dealer agreements giving them the right to use plaintiff's registered mark, requiring them to promote plaintiff's mark, and providing them with artwork to be incorporated into advertisements [*Id*., ¶¶ 15-18]. The Complaint further alleges that in January, 1999, defendants entered into a dealer agreement with plaintiff "to serve as an exclusive dealer of [plaintiff's] animal restraint products in the Hampton Roads, Virginia area" and allowing them to use plaintiff's "name, logos, trademarks and intellectual property" [*Id*., ¶ 19].

The Complaint next alleges that defendants took steps to promote plaintiff's mark "in the Hampton Roads, Virginia area", including obtaining telephone numbers under the names "DogWatch of Hampton Roads and DogWatch Hidden Fence Systems", which were "listed in, at least, local and regional telephone directories"; that, notwithstanding the July, 2004 termination of the dealer agreement, these numbers "continue to be listed in telephone directories in and around the Hampton Roads, Virginia area" and in some instances are accompanied by advertising using plaintiff's mark and artwork; that, following the termination of the agreement, defendants "have continued to hold themselves out as dealers in [plaintiff's] products", including operating a vehicle using the mark; that defendants have knowingly substituted products other than plaintiff's when performing service to plaintiff's customers, causing plaintiff to "receive[]

customer complaints"; that defendants continue to employ the telephone numbers "that, in and around the Hampton Roads, Virginia area, have been associated with [plaintiff]" and "continue to use the DogWatch name in telephone listings in Hampton Roads, Virginia regional telephone directories"; that defendants' conduct has "resulted in consumer confusion and in the misimpression by consumers that [d]efendants are affiliated in some respect with [plaintiff]"; and that defendants do not inform "customers or potential customers … that [d]efendants are no longer licensed … dealers" [Complaint, ¶¶ 20-27]. The Complaint alleges that, as a result of defendants' post-termination actions, plaintiff has suffered harm "to [its] general business and reputation and to the goodwill associated with" its mark, products, and dealer network and that defendants have "obtained substantial revenues and profits" [*Id*., ¶¶ 28, 29].

Plaintiff asserts eight claims, all premised on its allegations that defendants continue to obtain business from customers by unauthorized use of plaintiff' mark and name. Counts I and II are based on the Lanham Trademark Act, § 43(a), 15 U.S.C., § 1125(a) and allege that defendants have wrongfully used plaintiff's mark and associated telephone numbers, falsely designating the origin of defendants' products to plaintiff's damage [Complaint, ¶¶ 31-40]. Count III invokes the same facts in support of a claim for breach of the implied covenant of good faith and fair dealing; Counts IV and V do the same in support of claims for interference with prospective business advantage and/or relations; Count VI uses these facts to assert a claim of unfair trade practices; Count VII relies on the same facts to allege a claim of "passing off"; and, finally, Count VIII uses these facts to assert a claim of unjust enrichment [*Id*., ¶¶ 41-65].

The Complaint asserts jurisdiction as to Counts I and II under the Lanham Act, § 43 and 28 U.S.C., § 1338(a) [Complaint, ¶ 9]. Jurisdiction as to Counts III-VIII is premised on diversity of citizenship and the amount in controversy, pursuant to 28 U.S.C., § 1332(a) [*Id*., ¶ 10].

3

Central to defendants' pending motion, the Complaint asserts that this court has venue under 28 U.S.C., § 1391(b)(2) "because a substantial portion of the events or omissions giving rise to [p]laintiff's claims occurred in this judicial district, and a substantial part of the property at issue is situated here" [*Id.*, ¶ 11].

### Facts Established by Affidavit

Defendants have filed an affidavit by Gray, who is Pet Perimeters' President. Gray confirms that Pet Perimeters was an authorized dealer for plaintiff in the Virginia Beach/Hampton Roads area, doing business as "DogWatch of Hampton Roads", from January, 1999 until Pet Perimeters terminated the agreement effective July 24, 2004 based on customer complaints about plaintiff's products [Gray Aff., ¶ 3] Since that date, Pet Perimeters has done business as "Pet Stop of Hampton Roads" and has been in the business of marketing, selling, installing and servicing electronic pet "fencing" systems other than plaintiff's[*Id.*].

Pet Perimeters has always operated, and still operates, from one business location. While it was an authorized dealer for plaintiff, Pet Perimeters operated at 1501 Sandbridge Road, Virginia Beach, Virginia. Since October, 2004, Pet Perimeters has operated at 4364 Holland Road, Virginia Beach, Virginia [Gray Aff., ¶ 5]. During most of the time it was an authorized dealer for plaintiff, and at all times after terminating that arrangement, Pet Perimeters has limited its business to the cities and towns located in the greater Virginia Beach/Hampton Roads area in southeastern Virginia. The sole exception is that during part of the time that it was an authorized dealer for plaintiff, Pet Perimeters also serviced an area in northeastern North Carolina, which it transferred to another authorized dealer [*Id.*, ¶ 5]. The only advertising which Pet Perimeters has ever done is through telephone listings in the Verizon Communications "yellow pages" directory for the Virginia Beach/Hampton Roads area, and by direct mailings of various types to its

customers/prospective customers in the Virginia Beach/Hampton Roads vicinity [*Id*., ¶ 5]. In addition, Pet Perimeters has participated in three home/garden trade shows in the Virginia Beach/Hampton Roads area. Pet Perimeters has not maintained or used a web site or other electronic means of advertising since July, 2004 [*Id*., ¶ 5]. While it was an authorized dealer for plaintiff, Pet Perimeters on two different occasions maintained a simple web page for brief periods of time. The page contained basic information about Pet Perimeters and the products it sold. The page was never interactive and was last used in about July, 2003 [*Id*., ¶ 5]. Because Pet Perimeters is a small company with one location and must install and service the products which it sells, it cannot feasibly sell products outside the Virginia Beach/Hampton Roads vicinity [*Id*., ¶ 5]. Pet Perimeters has never marketed or sold products to anyone in Massachusetts, has never solicited business in Massachusetts through any electronic or print media, and has no customers in Massachusetts [*Id*., ¶ 6].

The Gray affidavit also identifies several witnesses who live in the Virginia Beach/Hampton Roads area who would have testimony which is essential to defense of this lawsuit. It lists five witnesses who have direct knowledge of the actions of Pet Perimeters following its termination of the dealer agreement with plaintiff in connection with its marketing and advertising activities, the identity of its customers/prospective customers, and its sales and revenues [Gray Aff., ¶ 11]. The affidavit also lists another witness who has information concerning the telephone listings referred to in plaintiff's Complaint and Pet Perimeters' communications about the listings in connection with the termination of its dealer arrangement with plaintiff [*Id*., ¶ 12]; a witness who is a customer of Pet Perimeters and who contacted plaintiff in January/February, 2005 to have her system serviced, was informed that plaintiff did not have an authorized dealer in the area, and was given Pet Perimeters' name and telephone

number [*Id.*, ¶ 13]; a witness who is a customer of Pet Perimeters who contacted plaintiff to obtain service for his system and was given the name of a dealer in Richmond who then refused to do the work [*Id.*, ¶ 14]; and thirteen witnesses who are customers of Pet Perimeters and who became dissatisfied with plaintiff's products due to mechanical and other defects, choosing to buy products from Pet Perimeters, instead [*Id.*, ¶ 15]. Finally, Gray points out that since terminating its dealer agreement with plaintiff, Pet Perimeters has gotten more than 150 new customers, all of whom live in the Virginia Beach/Hampton Roads area and could testify that they have not been confused about the origin of Pet Perimeters' products [*Id.*, ¶ 15].

Gray asserts that none of the customers or other witnesses not employed by Pet Perimeters would be willing to undertake the expense and inconvenience of traveling to Massachusetts and taking lodging there to attend a trial of this lawsuit [Gray Aff., ¶ 15].

In addition, although Gray is unaware of any customers/prospective customers who have encountered "confusion", who have complained about Pet Perimeters, or who have been misled into giving business to Pet Perimeters, if there are any such persons, they necessarily reside in the Virginia Beach/Hampton Roads area [Gray Aff., ¶ 16].

The affidavit states that Pet Perimeters is a small company with only four employees, including Gray and his wife, who is expecting a child on July 19, 2005 and that it would be a significant hardship for defendants to have to travel to Massachusetts and take up lodging there to attend a trial. In addition, all of Pet Perimeters' records pertaining to customer communications and invoices, payments, advertising, and other records are maintained at its business location in Virginia Beach [Gray Aff., ¶ 17].

The dealer agreement between Pet Perimeters and plaintiff specifies that Massachusetts law governs the agreement, but contains no forum selection clause [Gray Aff., ¶ 18 and Exh.

6

A].Finally, plaintiff has local dealers all over the United States and in several foreign countries [*Id*., ¶ 18 and Exh. B].

## ARGUMENT

**I.    THIS DISTRICT IS NOT ONE IN WHICH "A SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM OCCURRED", BECAUSE ALL ACTS OF ALLEGED INFRINGEMENT AND ANY RESULTING "PASSING OFF" OR CONSUMER CONFUSION, OCCURRED SOLELY IN THE EASTERN DISTRICT OF VIRGINIA. ACCORDINGLY, VENUE UNDER 28 U.S.C., § 1391(b)(2) IS IMPROPER.**

Under 28 U.S.C., § 1406(a), this court "shall dismiss" a case "laying venue in the wrong … district" or, in the alternative, "transfer such case to any district … in which it could have been brought" if transfer is "in the interest of justice".[1] 28 U.S.C., § 1391(b) sets forth the venue requirements for an action such as this, which "is not solely founded on diversity of citizenship".[2] Section 1391(b) contains three alternate categories of district in which the case may be brought. Section 1391(b)(1) authorizes venue in a district "where any defendant resides, if all defendants reside in the same State". Section 1391(b)(2) authorizes venue in a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated". Finally, "if there is no district in which the action may otherwise be brought", the lawsuit may be file in a district "in which any defendant may be found".

Plaintiff relies on § 1391(b)(2) as the sole basis for venue [Complaint, ¶ 11]. It has correctly eschewed § 1391(b)(1) because all defendants do *not* reside in Massachusetts. Plaintiff likewise has properly ignored the "fallback" provision in § 1391(b)(3), because all defendants *do*

---

[1] In its Answer, Pet Perimeters has objected to venue [Answer, Tenth Affirmative Defense], Gray was only served on May 25, 2005 [Return of Service.
[2] As noted, plaintiff has alleged claims under the Lanham Trademark Act and under state law [Complaint, ¶¶ 31-40, 41-65]. Only the latter are premised on diversity of citizenship [*Id*., ¶ 10]. Venue in actions based solely on diversity is controlled by 28 U.S.C., § 1391(a).

7

reside in Virginia and this action therefore could have been filed in the Eastern District of Virginia. The only remaining venue provision and the one on which plaintiff relies is, however, equally unavailable. The case must be dismissed or transferred because in an action premised on alleged infringement or misappropriation of trademark rights, § 1391(b)(2) authorizes venue solely in districts where the defendant advertised or solicited business, sold infringing products, or caused consumer confusion.

Two judges of this district have found § 1391(b)(2) venue in trademark infringement actions only because the defendant's infringing activities took place in Massachusetts. *See Reebok, Internat'l, Ltd. v. Dunkadelic, Inc.,* 2004 WL 413266 *2 (D. Mass. 2004), adopting the general rule that "venue is proper in a jurisdiction where the infringement is alleged to have occurred" and sustaining venue because the defendant's activities "all occurred, or were directed from, [its] … operations facility and headquarters" in Massachusetts; *Gary Scott Internat'l, Inc. v. Baroudi,* 981 F.Supp. 714, 717-18 (D. Mass. 1997), holding that for venue purposes in trademark cases "the actionable wrong takes place both where the infringing labels are affixed to the goods and where confusion of purchasers is likely to occur" and sustaining venue because the defendant had "advertised and sold its product in this district", as well as "solicit[ing] business from Massachusetts residents through its internet website".

The analysis adopted in this district is consistent with that used by other federal courts. In *Taylor & Francis Group, PLC v. McCue,* 145 F.Supp.2d 627 (E.D. Pa. 2001), the court dismissed trademark and related claims because there was no venue under § 1391(b)(2). The court first ruled that "where the plaintiff or the alleged trademark reside is not relevant". *Id*. at 629-30. It then noted that the defendants had designed and developed their offending websites in another district, operated the website in another district, had it hosted in another district, and

8

shipped the plaintiff's infringed goods from another district. *Id*. at 630. Holding that in a trademark case "the claimed wrongs occur where the passing off occurred", the court held that the failure to show that the goods were passed off to customers in the district where suit was filed was fatal to § 1391(b)(2) venue. *See also Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 295-96 (3rd Cir. 1994), holding that "the focus of our venue inquiry … is the location where the unauthorized passing off takes place – whether that occurs solely within one district or in many", and rejecting venue in the case at hand because "the alleged infringement occurred solely within" another district; *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995), holding that venue does not lie in a district where there has been no infringing activity by the defendant but which merely is the location of the injured trademark owner; *Mattel,. Inc. v. Adventure Apparel,* 2001 WL 286728 * 4-5 (S.D. N.Y. 2001), finding venue *because* the defendant's website targeted the district and resulted in an infringing sale there; *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club L't'd Partnership,* 34 F.3d 410, 412 (7th Cir. 1994), upholding venue *because* "the largest concentration of consumers likely to be confused" was in the district; *Davis v. Howse,* 2003 WL 21317289 *4-5 (N.D. Ill. 2003), finding venue *because* "the 'passing off' of the infringing product occurred in [the] District"; *Keelshield, Inc. v. Megaware Keel-Guard, Inc.,* 2001 WL 575833 * 8 (C.D. Ill. 2001), holding that a claim arises under § 1391(b)(2) "not only where the defendant's wrongful conduct occurred but also where the confusion of purchasers occurs, where the deceived customer buys the defendant's product, or … fails to buy the plaintiff's product"; *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 182-83 (S.D. N.Y. 1995), finding venue *because* the defendant "targeted [the district] through advertising and through direct-mail solicitation".

Here, plaintiff's own allegations show that there is no § 1391(b)(2) venue. All of plaintiff's claims, including its primary Lanham Act claims and the related claims under state law, are premised on infringement/misuse of its trademark and resulting consumer confusion. Plaintiff alleges that defendants were its authorized local dealer in the "Hampton Roads" area of Virginia and that their allegedly infringing activities post-termination have occurred there [Complaint, ¶¶ 1, 19, 20, 21, 25]. Defendants' affidavit confirms this. Pet Perimeters has conducted its post-termination activities exclusively in the Virginia Beach/Hampton Roads area of southeastern Virginia, has advertised solely in that area, and has targeted customers only in that area [Gray Aff., ¶ 5].[3] If any infringement or "passing off" has taken place, or if any consumer "confusion" has resulted, all can only have occurred in the Eastern District of Virginia. The sole connection of this district with the alleged events is plaintiff's residence here with the registered mark. Those facts, however, are categorically insufficient as a basis for § 1391(b)(2) venue. *Woodke, supra,* 70 F.3d at 985; *Taylor & Francis Group*, 145 F.Supp. 2d at 629-30.[4]

---

[3] Even while it was plaintiff's authorized dealer, Pet Perimeters' sole activity outside southern Virginia was during a brief period when it was an authorized local dealer in neighboring northeastern North Carolina [Gray Aff., ¶ 5].

[4] These courts have implicitly and correctly rejected the second clause, in § 1391(b)(2), referring to the district where "property that is the subject of the action is situated" as an alternative grounds for venue in cases such as this. That provision extends venue to a district where objective property has "physical presence" when it is "the very subject of the suit". Siegel, *Commentary on 1988 and 1990 Revisions of Section 1391,* 28 U.S.C.A. § 1391 at 10 (1993 ed.). *See Falcoal, Inc. v. Turkiye Komur Isletmeleri Krumu,* 660 F.Supp. 1536, 1543 (S.D. Tex. 1987), holding that the reference to "property" in § 1391(f)(1), from which the 1990 amendment to §§ 1391(a)(2) and 1391(b)(2) was derived, applies to property disputes and in rem actions, but not to claims alleging financial damages to a corporation's property. Two courts have used *Falcoal* to reject assertions of venue under § 1391(b)(2). *See American High-Income Trust v. AlliedSignal, Inc.,* 2002 WL 373473 *3 (D. Del. 2002); *Christopher v. United States,* 2001 WL 1256915 *1 (N.D. Cal. 2001), finding no venue under the "property" clause in § 1391(b)(2) "as the allegations in plaintiff's complaint do not concern the disposition of real or personal property". Here, even assuming *arguendo* that plaintiff's trademark might fit the definition of "property" in another context, it cannot be used to obtain venue in this case because the lawsuit

Accordingly, this lawsuit must be dismissed or, if this court determines that transfer is in the interests of justice, transferred to the Eastern District of Virginia.

## II. THE OVERWHELMING MAJORITY OF NON-PARTY WITNESSES IN THIS CASE ARE LOCATED IN THE EASTERN DISTRICT OF VIRGINIA OR WITHIN ITS SUBPOENA POWER, BECAUSE THAT IS WHERE ALL OF DEFENDANTS' ALLEGED MARKETING AND INFRINGING ACTS TOOK PLACE, WHERE ANY ALLEGED "PASSING OFF" HAPPENED, AND WHERE ANY ALLEGED CONSUMER "CONFUSION" OCCURRED. NONE OF THOSE WITNESSES CAN BE COMPELLED TO APPEAR AT TRIAL IN MASSACHUSETTS, AND THE CASE SHOULD BE TRANSFERRED UNDER 28 U.S.C., § 1404(a) TO THE EASTERN DISTRICT OF VIRGINIA, WHERE IT COULD HAVE BEEN BROUGHT.

In the alternative, defendants have moved for transfer of this lawsuit to the Eastern District of Virginia pursuant to 28 U.S.C., § 1404(a). That statute authorizes this court to transfer the lawsuit "to any other district … where it might have been brought" upon a finding that transfer will be "[f]or the convenience of parties and witnesses, in the interest of justice". Transfer is "at the discretion of the district court" and "the burden of proof … lies with the defendant." *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F.Supp. 34, 46 (D. Mass. 1997). The court "should be guided by the balancing of numerous factors, while bearing in mind that the plaintiff's choice of forum is entitled to 'great weight'". *Id.* [citations omitted]. "These factors include the convenience of the parties and witnesses, the availability of documents, the possibility of consolidation and the interests of justice." *Id.* "Convenience of the expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'" *Princess House, Inc. v. Lindsey*, 136 FRD 16, 20 (D. Mass. 1991) [quoting *Brant Point Corp. v. Poetzsch,* 671 F.Supp. 2, 5 (D. Mass.1987)]. "The court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their

---

does not concern the "disposition" of the trademark, but. instead, alleged damage to it in Virginia.

11

testimony, and whether the witnesses can be compelled to testify." *Id.* [citing *Brant Point, supra*, 671 F.Supp. at 3-4]. So measured, this case presents a convincing basis for transfer.

Simply put, all of the percipient, non-party witnesses are located in the Eastern District of Virginia or within its subpoena power. Plaintiff alleges that defendants have committed infringing acts in that district and that those acts have resulted in consumer confusion and, in turn, damages to plaintiff's trademark and business [Complaint, ¶¶ 1, 19, 20, 21, 25]. Defendants have identified several non-party witnesses, primarily its customers, who can testify to defendants' communications about the allegedly infringing telephone listings, Pet Perimeters' practices after termination of the dealer agreement, the lack of any consumer confusion, plaintiff's own conduct causing damage to its mark, plaintiff's post-termination referral of at least one customer to plaintiff because it had no local dealer, and plaintiff's referral of another customer to a dealer in another territory who refused to service the customer [Gray Aff., ¶¶12-15]. In addition, while defendants are not aware of the identity of any persons who would support plaintiff's allegations of "confusion" because there has been no discovery yet, any such persons necessarily live in the Eastern District of Virginia [Gray Aff., ¶¶ 5, 16]. Moreover, Pet Perimeters has obtained more than 150 new customers post-termination, all of whom can testify as to a lack of confusion on their part about the origin of Pet Perimeters' products and all of whom live in the Virginia Beach/Hampton Roads area [*Id.*, ¶ 15]. These facts are unsurprising, because Pet Perimeters advertises, markets, and sells products only in the Virginia Beach/Hampton Roads area. If plaintiff intends to prove its allegations of consumer confusion or resulting damage to its trademark, it can only do so through admissible testimony from persons living in the Eastern District of Virginia. None of those persons, however, can be compelled to appear at trial in this court. *See* Fed. R. Civ. P. 45(b)(2). All can be compelled to appear in the

12

Eastern District of Virginia. As defendants have indicated, their customers would be unlikely to undertake the cost and effort to travel to Massachusetts for a trial, a conclusion which is eminently plausible on its face [Gray Aff., ¶ 15].[5]

Against these facts, plaintiff can be expected to list its own employees in Massachusetts to substantiate its allegations of good will and related attributes of its allegedly infringed mark. But plaintiff has the benefit of a federal registration dating from 1993, so that testimony is ancillary at best. Moreover, there is no dispute that since July, 2004, Pet Perimeters has not been an authorized dealer. In addition, while plaintiff operates an international network of dealers, Pet Perimeters is a small, four-employee business which operates exclusively in the Virginia Beach/Hampton Roads area [Gray Aff., ¶ 5, 17]. The dealer agreement may specify that Massachusetts law governs its interpretation, but plaintiff's lawsuit does not require interpretation of that agreement. Instead, plaintiff's primary claims are infringement claims under federal law and all of its claims are based on the same allegations and involve post-termination conduct.[6]

On these facts, transfer is warranted. *See Rhee Bros., Inc. v. Seoul Shik Poom, Inc.*, 869 F.Supp. 31, 34 (D. D.C. 1994), transferring a trademark infringement case where the defendant identified nine non-party witnesses who lived in the transferee district and could be compelled to

---

[5] Federal courts uniformly hold that deposition testimony, even video-taped, is an inadequate substitute for testimony in court by a live witness. *See, e.g., Princess House, Inc., supra,* 136 FRD at 20 [citing *Brant Point, supra*, 671 F.Supp. at 4]; *In re Eastern Dist. Repetitive Stress Injury Litigation*, 850 F.Supp. 188, 194 (E.D.N.Y. 1994); *Lever Bros. Co. v. The Procter & Gamble Co.,* 23 F.Supp.2d 208, 211 (D. Conn. 1998); *Casey v. Chicago and Northwestern Transp. Co.,* 1993 WL 13427 *3 (N.D. Ill. 1993); *DiStefano v. Carozzi North America, Inc.,* 2002 WL 31640476 *2 (E.D. N.Y. 2002); *In re DVI, Inc.,* 2004 WL 1498593 *2 (D. Del. 2004); *Nilssen v. Everbrite, Inc.,* 2001 WL 34368396 *3 (D. Del. 2001).

[6] Even if the contract were more than ancillary to this lawsuit, which it is not, the Eastern District of Virginia is fully capable of applying the relevant law, just as this court undoubtedly has been called upon in the past to apply Virginia law.

attend trial there but could not be compelled in the transferor district and where the plaintiff's witnesses were its own corporate officials over whom it had control. *See also Princess House, Inc., supra,* 136 FRD at 18-22; *Brant Point Corp., supra,* 671 F.Supp. at 3-5; *Clinical Dynamics Corp. v. Dynatech Nevada, Inc.,* 1994 WL 175026 *3, 30 U.S.P.Q.2d 1969 (D. Mass. 1994); *Atari v. United Parcel Service, Inc.,* 211 F.Supp.2d 360, 362-65 (D. Mass. 2002); *New Medico Associates, Inc. v. Kleinhenz,* 750 F.Supp. 1145, 1146 (D. Mass. 1990). *Compare Hasbro, Inc., supra*, 994 F.Supp. at 46-47, where a corporate defendant charged with infringement which solicited business from around the United States over its website failed to make an adequate showing for transfer under § 1404(a) from this district to Colorado, because it could point to only one witness in Colorado, who was its owner and sole employee.

This is not a case where "[t]he convenience of the parties and witnesses are equally balanced." *Hasbro, Inc.* 994 F.Supp. at 46. Instead, it is a case where the non-party witnesses are overwhelmingly located in the proposed transferee district, and transfer should be ordered.

## CONCLUSION

For the reasons set forth herein, the lawsuit should be dismissed or transferred to the Eastern District of Virginia.

PET PERIMETERS, INC.
By its attorneys,


/s/ John Foskett
_____
Paul R. DeRensis, BBO No. 121000
John Foskett, BBO No. 175540
DEUTSCH WILLIAMS BROOKS
  DERENSIS & HOLLAND, P.C.
99 Summer Street
Boston, MA 02110-1213
(617) 951-2300

and

Paul A. Driscoll
Virginia State Bar No. 33476
Pender & Coward, P.C.
222 Central Park Avenue
Virginia Beach, VA  23462
(757) 490-3000

Date:  June 14, 2005

## CERTIFICATE OF SERVICE

I, John Foskett, certify that I understand that counsel of record will receive electronic notice of the electronic filing of this pleading.


/s/ John Foskett
_____
John Foskett


DWLIB 182671v1
8749/00