UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOGWATCH, INC.

Plaintiff,

v.

PET PERIMETERS, INC. F/K/A DOGWATCH OF HAMPTON ROADS INC. A VIRGINIA CORPORATION, AND WILLIAM GRAY

Defendant.

Civil Action No. 05-10877-DPW

**AFFIDAVIT OF WILLIAM D. GRAY**

William D. Gray, being duly sworn, deposes under oath and states as follows:

1. My name is William D. Gray. I have personal knowledge of the matters set forth herein.

2. I am named as a defendant in this lawsuit. I have reviewed the allegations of the Complaint.

3. At all times relevant to the allegations in the Complaint, I have been President of defendant Pet Perimeters, Inc. ("Pet Perimeters"), which between January, 1999 and approximately July 24, 2004 was known as DogWatch of Hampton Roads, Inc.. During that period of time, Pet Perimeters was an authorized dealer for plaintiff DogWatch, Inc. By letter dated June 24, 2004, and in compliance with the dealer agreement between Pet Perimeters and plaintiff, Pet Perimeters terminated its dealer arrangement with plaintiff on thirty days' notice due to a number of complaints by customers concerning the quality of plaintiff's products. Since

approximately July 24, 2004, Pet Perimeters has done business as Pet Stop of Hampton Roads. Pet Perimeters is a Virginia corporation.

4. Plaintiff is in the business of marketing and selling invisible, electronic pet "fencing" systems to pet owners (primarily dog owners), primarily through local dealers around the United States. During the time that it acted as plaintiff's authorized dealer, Pet Perimeters marketed, sold, installed and serviced these products manufactured by plaintiff. Following its termination of the dealer agreement with plaintiff, Pet Perimeters has been in the business of marketing, selling, installing and servicing other invisible, electronic pet "fencing" systems.

5. Pet Perimeters has always operated, and still operates, from one business location. While it was an authorized dealer for plaintiff, Pet Perimeters operated at 1501 Sandbridge Road, Virginia Beach, Virginia. Since October, 2004, Pet Perimeters has operated at 4364 Holland Road, Virginia Beach, Virginia. During most of the time it was an authorized dealer for plaintiff, and at all times after terminating that arrangement, Pet Perimeters has limited its business to the greater Virginia Beach/Hampton Roads area in southeastern Virginia, consisting of the cities and towns of Virginia Beach, Chesapeake, Norfolk, Portsmouth, Hampton, Newport News, Yorktown, Poquoson, Seaford, Gloucester, Mathews, Williamsburg, Toano, Smithfield, Suffolk, Isle of Wight, Carrollton, Franklin, and part of Virginia's "Eastern Shore", as well as the Virginia and North Carolina sides of Knotts Island. The sole exception is that during part of the time that it was an authorized dealer for plaintiff, Pet Perimeters also serviced an area in northeastern North Carolina. That area was transferred to another authorized dealer. The only advertising which Pet Perimeters has ever done is through telephone listings in the Verizon Communications "yellow pages" directory for the Virginia Beach/Hampton Roads area, which to my knowledge is distributed only in the Virginia Beach/Hampton Roads area, and by direct

mailings of various types to its customers/prospective customers in the Virginia Beach/Hampton Roads vicinity. In addition, Pet Perimeters has participated in three home/garden trade shows in the Virginia Beach/Hampton Roads area. Pet Perimeters has never maintained or used a web site or other electronic means of advertising since July, 2004. While it was an authorized dealer for plaintiff, Pet Perimeters on two different occasions maintained a simple web page for brief periods of time. The page contained basic information about Pet Perimeters and the products it sold, and was never interactive. This web page was last used in about July, 2003. Because Pet Perimeters is a small company with one location and must install and service the products which it sells, it cannot feasibly sell products outside the Virginia Beach/Hampton Roads vicinity even if it wanted to.

6. Pet Perimeters has never marketed or sold products to anyone in Massachusetts, has never solicited business in Massachusetts through any electronic or print media, and has no customers in Massachusetts.

7. At all times relevant to the allegations in the Complaint, I have resided at 1500 Sandbridge Road, Virginia Beach, Virginia, where I have lived since May, 1997. This is my only residence. I have never resided in Massachusetts.

8. I categorically deny that either Pet Perimeters or I have engaged in infringement as alleged in the Complaint. Since the purpose of this affidavit is solely to address the issue of venue, however, I will not set forth the details of Pet Perimeters', my, or plaintiff's actions since July, 2004. Instead, given the facts set forth above, it is obvious that the events and acts of infringement alleged in the Complaint, ¶¶ 20-27, can only have occurred in the Virginia Beach/Hampton Roads vicinity. In fact, the allegations of the Complaint concede as much.

9. Accordingly, the Complaint alleges that Pet Perimeters was an exclusive dealer of plaintiff's products "in the Hampton Roads, Virginia area"; that defendant took "various steps to advertise and promote "DogWatch in the Hampton Roads, Virginia area"; that to that end Pet Perimeters was listed at two telephone numbers in the 757 area code (which is Virginia Beach), which were listed in "local and regional telephone directories"; that defendants "are continuing to employ" telephone numbers "that, in and around the Hampton Roads, Virginia area" are associated with plaintiff; and that defendants continue to use plaintiff's name "in telephone listings in Hampton Roads, Virginia regional telephone directories" [Complaint, ¶¶ 19, 20, 25]. Moreover, if there has been "consumer confusion" and "harm to [plaintiff's] general business and reputation and to the goodwill associated with" plaintiff's trademark, as alleged, any such confusion and harm can only have occurred in the Virginia Beach/Hampton Roads vicinity [Complaint, ¶¶ 26, 28].

10. If this matter went to trial, there are several witnesses who live in the Virginia Beach/Hampton Roads area who would have information and testimony which is essential to Pet Perimeters' defense of this lawsuit.

11. The following persons have direct knowledge of the actions of Pet Perimeters following its termination of the dealer agreement with plaintiff in connection with its marketing and advertising activities, the identity of its customers/prospective customers, and its sales and revenues:

William D. Gray
1500 Sandbridge Road
Virginia Beach, Virginia

Heather Gray
1500 Sandbridge Road
Virginia Beach, Virginia

John Gray
1501 Sandbridge Road
Virginia Beach, Virginia

Nancy Gray
1501 Sandbridge Road
Virginia Beach, Virginia

Martin Janzen
602 Sparrow Road
Chesapeake, Virginia

12. In addition to the above persons, the following witness has information concerning the telephone listings referred to in plaintiff's Complaint and Pet Perimeters' communications about the listings in connection with the termination of its dealer arrangement with plaintiff:

William Nixon
Verizon Communications
700 Independence Parkway
Suite 300
Chesapeake, Virginia

13. The following witness is a customer of Pet Perimeters who contacted plaintiff in January/February, 2005 to have her system serviced, was informed that plaintiff did not have an authorized dealer in the area, and was given Pet Perimeters' name and telephone number:

Kathy Malaspina
Hobbsville, North Carolina

Hobbsville is located within 100 miles of the federal courthouses for the Eastern District of Virginia in Norfolk and in Newport News.

14. The following witness is a customer of Pet Perimeters who contacted plaintiff to obtain service for his system and was given the name of a dealer in Richmond who then refused to do the work:

Greg Bell
Virginia Beach, Virginia

15. The following witnesses are customers of Pet Perimeters who became dissatisfied with plaintiff's products due to mechanical and other defects and selected Pet Perimeters;

Rebecca Brannock
608 Glasgow Street
Chesapeake, Virginia

Pat Smith
1028 West Road
Chesapeake, Virginia

Mitch Culp
413 Carolanne Point Circle
Virginia Beach, Virginia

Joan Vakos
909 Holladay Point
Virginia Beach, Virginia

Jim Wootten
1732 Lovetts Pond
Virginia Beach, Virginia

Ann & Jay Birsch
1736 Lovetts Pond
Virginia Beach, Virginia

Mike Thompson
501 Cedar Lane
Virginia Beach, Virginia

Laurie Perkins
1845 Cooper Road
Virginia Beach, Virginia

Dan Frohman
4940 Exeter Drive
Suffolk, Virginia

Ken O'Neil
720 School House Road
Chesapeake, Virginia

Donna Allen
3676 Charity Neck Road

Virginia Beach, Virginia

G.A. Christie
3845 Old Shell Road
Virginia Beach, Virginia

The witnesses listed above all can testify, in addition, about Pet Perimeters' marketing practices as "Pet Stop of Hampton Roads" and about whether there has been any confusion with plaintiff's products. In addition to these people, Pet Perimeters has obtained more than 150 new customers since it started day business as "Pet Stop of Hampton Roads". All of these people live in the Virginia Beach/Hampton Roads area, and can testify that they had no confusion as to the origin of Pet Perimeters' products and that they were fully aware that Pet Perimeters is no longer affiliated with plaintiff. I have not provided the extensive list of names and addresses due to its length, but can do so if necessary. Based on my dealings with them, it is my impression that none of the witnesses listed in paragraphs 12-15, above, would be willing to undertake the expense and inconvenience of traveling to Massachusetts and taking lodging there to attend a trial of this lawsuit. Almost all, as noted, are merely business customers of Pet Perimeters.

16. In its Complaint, plaintiff alleges that there have been customer complaints to plaintiff about Pet Perimeters, that there has been "consumer confusion", that Pet Perimeters does not inform customers/potential customers that it is not licensed by plaintiff, and that Pet Perimeters' alleged conduct has damaged plaintiff's business and good will [Complaint, ¶¶ 24, 26, 27, 28]. I am unaware of any customers/prospective customers who have encountered "confusion", who have complained about Pet Perimeters, or who have been misled into giving business to Pet Perimeters. If there are any such persons, however, they necessarily reside in the Virginia Beach/Hampton Roads area, for the reasons set forth above.

countries. I personally know several of plaintiff's dealers in localities throughout the United States.

Signed under the pains and penalties of perjury.

William D. Gray

Date: June 13, 2005

COMMONWEALTH OF VIRGINIA )
)
CITY OF VIRGINIA BEACH ) to wit:

Sworn and subscribed before me on this 13th day of June, 2004, by William D. Gray.

Notary Public

My commission expires: March 31, 2007

DWLIB 182580v1
8749/00

Exhibit A

DOGWATCH INC.
10 MICHIGAN DRIVE
NATICK, MA 01760
PHONE: (508) 650-0600 FAX: (508) 650-1620

# DEALER AGREEMENT

1. Appointment

DogWatch ("Company") hereby appoints _____________("Dealer") as a dealer for the sale of DogWatch Products.

2. Responsibilities of Dealer

Dealer shall use its best efforts to create, increase and satisfy a demand for the products by selling the products as follows:

a. Money Back Guarantee: Dealer agrees to refund the full purchase price of DogWatch Hidden Fence Systems (less the cost of installation and insulated wire) of any product sold to a customer within the first 30 days from the date of sale if the customer is not completely satisfied.
b. Installation & Maintenance: Dealer shall offer to install in accordance with the company's installation manual and offer on-going maintenance and support services for the products.
c. Training: Dealer shall instruct its customers in the training of their dogs and the proper use of the products in accordance with the company's training manuals.
d. Spare & Replacement Parts: Dealer shall keep in stock sufficient spare and replacement parts as is necessary for the performance of dealer's installation and maintenance obligations.
e. Trademark & Advertising: Dealer shall be allowed to use (but shall not acquire an ownership interest in) Company's trademarks in connection with the sale of the products. All advertising and promotional materials must be approved in advance, such approval not to be unreasonably withheld.
f. Use of Customer Order Forms: Dealer shall sell all of the products pursuant to a Customer Order Form provided by DogWatch Inc.
g. Payment: Payment for the products shall be prepaid, C.O.D. or credit card.
h. Alterations: Dealer shall not modify or alter the products. Dealer shall only sell products, parts and materials provided and/or authorized by Company.
i. Sale to Public: All products sold hereunder shall be for sale to the public, not for resale to other dealers.
j. Limitations: THIS PRODUCT IS INTENDED FOR USE ONLY WITH DOMESTIC DOGS. DEALER SHALL NOT SELL PRODUCTS TO CUSTOMERS FOR USE WITH DOMESTIC DOGS WITH HISTORY OF AGGRESSIVE BEHAVIOR. DEALER SHALL NOT SELL ANY PRODUCTS WHICH COMPETE WITH DOGWATCH PRODUCTS.

3. Delivery

Delivery of all products ordered by dealer shall be made F.O.B. Company's factory. In the absence of shipping instructions, company shall select a carrier on behalf of dealer, but company shall have no liability for the performance of the carrier.

4. Warranties/Indemnification

a. EXCEPT FOR THE WARRANTIES SET FORTH IN THIS SECTION, COMPANY MAKES NO OTHER WARRANTY WHATSOEVER WITH RESPECT TO THE PRODUCTS. ALL WARRANTIES, CONDITIONS, REPRESENTATIONS, INDEMNIFICATIONS AND GUARANTEES, EXPRESS OR IMPLIED, WHETHER ARISING UNDER ANY PRIOR AGREEMENT OR UNDER ORAL OR WRITTEN STATEMENT MADE BY OR ON BEHALF OF COMPANY IN NEGOTIATIONS WITH DEALER OR ITS REPRESENTATIVES, EXCEPT FOR THE WARRANTIES SET FORTH IN THIS SECTION 4 OF THIS AGREEMENT, INDCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY OVERRIDDEN AND EXCLUDED, AND NO LIABILITY SHALL ATTACH TO COMPANY EITHER IN CONTRACT OR IN TORT, FOR ANY PERSONAL INJURY, DEATH, DAMAGE TO PROPERTY, LOSS OF PROFITS, DAMAGES, COSTS, CHARGES, LIABILTIES OR EXPENSES, WHETHER DIRECT OR INDIRECT, CONSEQUENTIAL OR OTHERWISE, WHICH ARISE OUT OF OR IN CONNECTION WITH THE SALE OF THE PRODUCTS OR THE SUPPLY OF SERVICES UNDER THIS AGREEMENT.

b. COMPANY, SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THE CUSTOMER ORDER FORM, WARRANTS THAT IT WILL REPAIR OR REPLACE, AT ITS DISCRETION, WITHOUT CHARGE FOR PARTS OR LABOR, THE PRODUCT OR ANY PART (OTHER THAN INSULATED WIRE) WHICH IS FOUND BY COMPANY TO BE DEFECTIVE BY REASON OF IMPROPER WORKMANSHIP AND/OR MATERIALS FOR THE PRODUCT WARRANTY PERIOD FROM THE DATE OF DEALER'S ORIGINAL SALE.

c. DEALER AGREES TO INDEMNIFY AND HOLD COMPANY HARMLESS IN CONNECTION WITH ANY CLAIMS, LOSSES OR DAMAGES (INCLUDING LEGAL FEES AND EXPENSES) ARISING IN CONNECTION WITH THE MARKETING, INSTALLATION, TRAINING, SERVICING OR USE OF PRODUCTS BY DEALER.

d. DEALER SHALL CARRY GENERAL LIABILITY INSURANCE IN AN AMOUNT EQUAL TO AT LEAST $1,000,000 NAMING COMPANY AS AN ADDITIONAL INSURED AND SHALL PROVIDE COMPANY WITH A CERTIFICATE OF INSURANCE.

5. Relationship of the Parties

Dealer is acting as an independent contractor and for its own account in soliciting orders and performing its other services under this Agreement.

6. Termination

a. Upon the occurrence of any of the following acts, dealer shall be deemed to be in default under this Agreement:
   1. Dealer fails to cure any payment deficiency upon ten (10) days written notice; or
   2. Dealer fails to perform any of its other obligations under any part of this Agreement upon thirty (30) days written notice.

b. Upon the occurrence of the acts, as defined above, company, in its sole discretion may terminate this Agreement by written notice to dealer, such termination to be effective immediately.

c. This agreement may be terminated by either party with 30 days written notice.

7. General

a. Agreement and all sales of products by company to dealer shall be governed by the laws of the Commonwealth of Massachusetts.

b. Dealer warrants that the person signing this Agreement on behalf of Dealer has full authority to sign the Agreement.

c. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns provided that dealer may not assign this agreement without prior written consent of company.

Company:

DogWatch, Inc.

By: ______

Title: ______

Date: ______

Dealer:

DogWatch of Hampton Roads

By: William D Gray

Title: Owner William D Gray

Date: 1 / / 99

Exhibit B

Case 1:05-cv-10877-DPW Document 11 Filed 06/14/2005 Page 14 of 20



**Find My Dealer**
enter zip code



# Locate Dealer

DogWatch Dealers are trained, knowledgeable professionals. They are committed to your pet's happiness and well-being, much like everyone else associated with DogWatch. This means you'll get a lot of help and good advice in selecting the products that are right for you and your pet. And long after you've made your purchase, you'll be able to count on continued expert support.

To locate the dealer serving your area within the USA, please enter your zip code below:

Fetch!

Are you interested in becoming a DogWatch dealer?

To locate a dealer in Canada or elsewhere outside the U.S., below is a list of international dealers. If there isn't a dealer near you, contact Dogwatch.

## Canada

**Alberta**
DogWatch of Alberta
Larry Kowatch
403-845-0831
Email: dogwatch@telus.net

**British Columbia**
DogWatch of British Columbia
Jack Panter
250-744-4203
Email: victoriadirect@canada.com

**Eastern Ontario and Quebec**
Ottawa & Area DogWatch
Jamie and Kristine Foley
613-290-5559 / Toll Free: 1-877-747-3738
Email: ottawadogwatch@aol.com

**Sydenham, Ontario**

Case 1:05-cv-10877-DPW Document 11 Filed 06/14/2005 Page 15 of 20

G.B. Wolfe
Brad Wolfe
800-647-3307
Email: gbwolfe@kingston.net
Web: www.dogwatchontario.ca

**Toronto, Ontario**
DogWatch of South Central Ontario
Brian & Dora Marshall
905-939-0715 / Toll Free: 877-558-5515
Email: tottensands@sympatico.ca
Web: www.dogwatch.ca

## International

**Argentina**
Dog Guard
Federico Cotella
4798-9054
Email: dogguard@satlink.com
Web: www.dogguard.com.ar

**Australia**
Canine Containment Co.
Vance Plummer, Fiona Plummer
1 800 223 364; 043861 7901
Email: Vance@hiddenfence.com.au
Web: www.hiddenfence.com.au

**Belgium, France, Switzerland**
Franco Casagrande
+41-22-796-53-19
Email: casune@infomaniak.ch

**Chile**
DogWatch of Chile
Juan Francisco Sotta
(56-2) 242-3822
Email: dogwatch@manquehue.net

**Israel**
Uncle Moshes Dog Farm
Mervyn Engelberg
9723-971-1111

**Italy**
Badi Farms
Ferruccio Badi
0331 908003
Email: info@badifarm.com
Web: www.badifarm.com

**Russia, Belarus, Ukraine, Georgian Republic, Armenia, Azerbaijan**
PETRA CJSC
Irina Shevtsova

Case 1:05-cv-10877-DPW Document 11 Filed 06/14/2005 Page 16 of 20

+7(095)298-2620
Email: support@pettra.ru

**The Netherlands**
Dogtra-Holland
Jan Van de Kamp
(0031) 0344602218
Email: info@jvdkamp.nl
Web: www.dogwatch.nl

**United Kingdom**
DogFence
Ward Chapman
08450-623623
Email: ward.chapman@lineone.net
Web: www.dogfence.co.uk

---



**Find My Dealer**

enter zip code

fetch!

# Join DogWatch

Thank you for inquiring about becoming an authorized DogWatch Dealer!

DogWatch is the perfect way to expand your business or branch out into a new venture. The pet containment industry is experiencing rapid growth. DogWatch Inc. is growing, too. We are the premier supplier of hidden fence systems, and we are poised to continue to expand our already strong national and international distribution.

**Here's What We'll Do.**

Along with high quality, competitively-priced products, DogWatch offers protected selling territories and the most comprehensive dealer support programs in the industry, including:

- DogWatch University Dealer training and education covering product knowledge, system installation, and dog training.
- Marketing materials including brochures, flyers, and presentation folders
- Yellow Pages co-op advertising program
- Trade Show Exhibit Displays
- Local referral and VIP ProDog™ Program
- Point of purchase displays
- Public relations support including local and national press releases
- Annual Dealer Meeting, quarterly newsletter, product updates, and other communications program.

**Sign Me Up!**

To start on the path to becoming a DogWatch Dealer, please fill out and submit the form below:

Name *

Address 1 *

Address 2

City *

State *

Zip *

Phone *

Email *

Submit

Once you become a DogWatch Dealer, you will service a protected market. Below is a listing of the U.S. open markets DogWatch is seeking to fill:

**Alaska**
Anchorage

**Alabama**
Mobile, Dothan

**Arkansas**
Fayetteville, Fort Smith, Little Rock

**California**
Bakersfield, Fresno, Merced, Redding, San Diego

**Florida**
Pensacola, Sarasota

**Georgia**
Savannah, Gulfport, Athens, Dalton

**Hawaii**
Honolulu

**Iowa**
Sioux City, Waterloo

**Idaho**
Boise

**Illinois**
Bloomington, Peoria

**Indiana**
Terre Haute, Valpariso

**Kansas**
Topeka

**Louisiana**

Monroe, Shreveport, Lafayette, Baton Rouge

**Maryland**
St. Charles

**Michigan**
Upper Peninsula

**Minnesota**
Moorehead, Rochester

**Missouri**
Cape Girardeau

**Montana**
Billings, Great Falls

**North Carolina**
Elizabeth City

**North Dakota**
Bismark, Fargo, Grand Forks

**New Jersey**
Morris, Middlesex, Somerset, Essex

**Nevada**
Las Vegas

**Ohio**
Youngstown

**Oklahoma**
Lawton

**Oregon**
Eugene, Medford, Portland

**Pennsylvania**
Erie

**South Carolina**
Columbia

**South Dakota**
Rapid City, Sioux Falls

**Tennessee**
Knoxville

**Texas**
Abilene, Amarillo, Corpus Cristi, Laredo, Lubbock, Odessa, Midland, San Angelo, Waco

**Washington**
Bellingham, Seattle

**West Virginia**
Huntington

**Wyoming**
Casper

---

- Locate Dealer
- Join DogWatch
- Dealer Support